**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| ESTATE OF KIMBERLY ANN NICKERSON, DECEASED, WAYNE COUNTY PROBATE COURT NUMBER 12-827514-DE, BY MOLLY BROWN, PERSONAL REPRESENTATIVE, | Case No. 18-13965 Honorable Nancy G. Edmunds |
| Plaintiff, | |
| v. | |
| OCWEN LOAN SERVICING, LLC | |
| Defendant. | |

**ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]**

This dispute centers on whether Ocwen Loan Servicing, LLC is liable for personal property that was destroyed in connection with impending foreclosure proceedings following the death of the homeowner. Pending before the Court is Defendant's motion for summary judgment. (ECF No. 14.)[1] On October 23, 2019, the Court held a hearing in connection with the motion. For the reasons set forth below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.  Background**

Plaintiff is the estate of Kimberly Ann Nickerson, deceased. Molly Brown was Nickerson's only daughter and sole heir. She is the personal representative of Nickerson's estate. On November 1, 2016, Nickerson passed away. On or about May 7, 2017, a probate estate for Nickerson was opened in the Wayne County Probate Court.

---

[1] At the hearing, Plaintiff orally moved the Court to enter summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56(f)(1).

1

Initially, Nickerson's sister, Kelly Greene was appointed as the personal representative of the estate. Shortly after Nickerson's death, Greene filed a purported will for Nickerson with the probate court that named Greene the personal representative of Nickerson's estate and gave ownership of Nickerson's property to Greene's daughter. Brown was nineteen years old at the time. When Brown discovered Greene and her daughter were claiming ownership of Nickerson's property by virtue of the purported will, Brown retained an attorney to contest the will. Brown moved to remove Greene as personal representative and to set aside the will. Ultimately, Greene and her daughter agreed to an order recognizing that the will was a forgery and acknowledging that Brown was the sole heir and successor personal representative of Nickerson's estate. On October 30, 2017, Brown was appointed successor personal representative of the estate.

At the time of her death, Nickerson owned and resided in her home located at 31522 Palmer Rd., Westland, MI 48186. Brown occasionally stayed at the property and kept some of her personal belongings there. The estate is now the owner of the property, and the contents of the property are at the center of this dispute.

The property was secured by a mortgage and Defendant Ocwen Loan Servicing, LLC serviced the mortgage. The summary judgment record reflects that from November 2017 through March 2018 no payment was made on the mortgage. In March 2018, Defendant began its foreclosure process on the property. On April 3, 2018, Brown faxed Defendant documents confirming she was the personal representative of the estate. She requested that all communications concerning the property be sent to her and provided a contact address in Farmington Hills, Michigan. Defendant's records confirm receipt of Brown's notice.

Brown also claims that at or around this time she learned the mortgage was several months delinquent. The summary judgment evidence reflects that on April 30, 2018, Brown made a $3,200 payment on the mortgage to bring it current. Defendant's records confirm receipt of this payment and note that the foreclosure process was stopped once the mortgage became current.

It is unclear whether any additional payments were made on the mortgage after April 2018. In its motion, Defendant claims the mortgage was in default as of May 1, 2018. But a letter from Defendant dated May 7, 2018 provides that "On 05/02/2018, foreclosure proceedings were stopped, as the loan was re-instated." And although the May 7, 2018 letter states foreclosure proceedings were stopped, Defendant apparently continued the foreclosure process. On June 29, 2018, Defendant's vendor—Altisource—placed a label on the door of the property requesting an occupant to call Altisource. No one ever called Altisource, which led Altisource to conclude the property was vacant. There is no evidence in the record that Altisource or Defendant ever reached out to Brown or took any additional steps to verify the occupancy status of the property at that time.

Defendant states that on July 27, 2018 Brown, as personal representative of Nickerson's estate, filed her first property inventory with the probate court. The source of this July 27, 2018 date is not clear from the record. The inventory shows January 27, 2018 as the signature date and April 5, 2018 as the date of filing with the probate court. Notwithstanding, the inventory submitted by Brown was identical to the original inventory submitted by Greene and listed the house as the only property of the estate.

On or about August 6, 2018, Altisource contracted with JGM Property, Inc. to "secure the property." It is not clear from the record why JGM was needed to secure the

property at that time or how Altisource made the decision to secure the property. According to Defendant, on or about August 31, 2018, all personal property was removed from the home and destroyed. According to Plaintiff, Defendant also placed locks on the property at this time to prevent Brown from entering. Defendant, however, does not mention the lock-out in its summary judgment briefing. It is not clear whether Brown continues to be locked out from the property, and if she is locked out, under what authority Defendant was permitted to take such actions.

In support of its motion for summary judgment, Defendant submits an affidavit of JGM's owner who attests to JGM's actions taken in connection with the property. She states that JGM confirmed the property was not occupied and that JGM's contractor inspected the property and determined that "there was a large amount of droppings both rat and mouse along with horrific odor through the home and that the living conditions were unsanitary." She states that JGM's contractor determined that "the droppings were not only on the floor but on top of and in personal property that was left behind. Although rodent urine is not visible to the naked eye, it could only be assumed that the urine was also in all areas that fecal droppings were present." And she states that JGM's contractor concluded that "due to the fact that Hantavirus Pulmonary Syndrome and other contagious diseases are spread through the droppings and urine of rodents, everything was considered contaminated and hazardous, therefore all items were bid to be removed and then removed as debris."

There are problems with the JGM affidavit. One problem is that affidavit is incomplete. There are references to photographs in a report, but no photographs are included in the exhibit. Another problem is the lack of personal knowledge of the affiant.

The affidavit is made by JGM's owner, but there is no indication that she was involved in the trash-out or had any first-hand knowledge about the property. Further, all the quoted language where JGM's contractor is purportedly explaining the reason for the trashing of Plaintiff's personal property comes from a memorandum written by JGM to Altisource dated October 3rd, 2018, which is apparently addressing Plaintiff's initial complaints to Defendant. There is no report from JGM's contractor. There is no explanation as to the source of the quoted language. There are no communications from the time of the trash-out. And none of the records now relied upon by Defendant appear to have been made simultaneously or at the time of the trash-out.

There are also inconsistencies between the affidavit and other facts in the record. Defendant's internal notes reflect that as early as August 20, 2018, Plaintiff's counsel notified Defendant that Brown resided at the property. Defendant's records reflect that on August 22, 2018, a door knock was performed by one of its agents at the property and found it to be "occupied" with an overall condition of "average." Plaintiff also submits evidence suggesting that the trash-out of the property was conducted on September 4, 2018, not August 31, 2018. The affidavit also does not explain why Plaintiff's trees and bushes were removed from the property.

In addition, Defendant's representative testified that: (1) the utilities were on in the house at the time of the trash-out; (2) the home was being lived in at the time of the trash-out, which was evidenced by the presence of furniture and personal belongings in the bed rooms, kitchen, and living room; and (3) the JGM report identified the condition of the house to be average for the neighborhood. Further, Altisource's records indicate that the presence of animal waste was not the reason for the trash-out. Finally, it is not clear from

the summary judgment evidence that the mortgage was in fact in default or that the property was or should have been in the foreclosure process at the time of the trash-out.

After the trash-out, on September 14, 2018, Plaintiff's counsel wrote an e-mail to Defendant asserting the estate's claim against Defendant for destroying Plaintiff's personal property. Plaintiff also made an offer to pay off the loan in its entirety. Defendant did not respond. On November 21, 2018, Plaintiff initiated this lawsuit in state court. Defendant subsequently removed the case to this Court on diversity grounds. Neither Altisource nor JGM are included as defendants in the complaint. On May 7, 2019, Plaintiff served discovery responses to Defendant that included a list of all personal property allegedly destroyed by Defendant or its agents for which Plaintiff now seeks damages. These items were not included on the original inventory filed in the probate proceedings. On June 4, 2019, Brown filed an amended inventory in the probate court claiming personal property valued at approximately $40,000. This inventory did not itemize the specific personal property claimed.

Following the close of discovery, Defendant moved for summary judgment on all of Plaintiff's claims. Defendant's motion is now before the Court. In addition, at the hearing to consider Defendant's motion, Plaintiff orally moved the Court to consider granting summary judgment in its favor. The Court declines to entertain Plaintiff's oral motion for summary judgment without adequate notice and an opportunity to respond having been provided to Defendant.

**II.     Summary Judgment Standard**

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. V. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In addition, once the moving party has met its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bormuth v. Cty. Of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017). The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment and show that a genuine issue for trial exists—*i.e.*, that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

**III. Analysis**

**A. Judicial Estoppel**

Defendant maintains that Plaintiff should be judicially estopped from recovering damages for the allegedly destroyed personal property because the original inventory filed with the probate court did not identify any personal property.

The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding, where the prior court adopted the contrary position "either as a preliminary matter or as part of a final

7

disposition." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). Judicial estoppel is an "equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id.* Judicial estoppel, however, should be applied with caution to "avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Id.*; *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). The doctrine does not require a finding that an opponent relied on the position taken by the party in the earlier litigation, and it does not require a showing of mutuality. *Teledyne*, 911 F.2d at 1220. It does, however, mandate a finding of judicial acceptance of the prior position, and it only applies if the first court "adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id.* at 1218; *Warda v. Comm'r*, 15 F.3d 533, 538 (6th Cir. 1994).

Here, Defendant's reliance on judicial estoppel is without merit because Defendant fails to demonstrate "judicial acceptance" of Plaintiff's original inventory. Upon becoming personal representative of Nickerson's estate, Brown filed a first amended inventory with the probate court that did not list any personal property as assets of the estate. Subsequently, and several months after this lawsuit was filed, Brown submitted a second amended inventory identifying the general existence of the personal property at issue in this lawsuit. There is no evidence indicating the probate court took any action with respect to or in reliance upon the original inventory submitted by Brown. There is also no evidence that Plaintiff argued in the probate proceedings that the estate lacked personal

8

property or obtained any benefit from not listing the estate's personal property on the original inventory.[2] Moreover, Brown timely amended the inventory to identify the existence of personal property belonging to the estate. There is simply no evidence in the record suggesting an abuse of the judicial process or the "cynical gamesmanship" which the doctrine of judicial estoppel is meant to prevent. Accordingly, Defendant's motion for summary judgment based on the doctrine of judicial estoppel is denied.

### B. Plaintiff's conversion and trespass to chattels claims

In Counts I, II, and III of the complaint, Plaintiff alleges claims for statutory and common law conversion and trespass to chattels based on Defendant's and its contractors' destruction and removal of Plaintiff's personal property from the premises. Defendant contends it is entitled to summary judgment on these claims.

Under Michigan law, the torts of conversion and trespass to chattels are similar. To establish a claim for trespass to chattels, a plaintiff must establish a wrongful exercise of dominion or control over the plaintiff's personal property. *See Burns v. Kirkpatrick*, 91 Mich. 364, 365-66 (1892); *Ansley v. Conseco Fin. Serv. Corp.*, No. 232266, 2002 WL 31955217, at *2 (Mich. Ct. App. Dec. 17, 2002). The tort of conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Head v. Phillips Camper Sales*, 234 Mich. App. 94, 111 (1999) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992)); *Hesling v. Wells Fargo Bank, NA*, No. 1:12-CV-1249, 2013 WL 12109432, at *7 (W.D. Mich. Dec. 12, 2013). In Michigan, the elements of conversion are (1) "any distinct act of

---

[2] At the hearing, Defendant suggested that Plaintiff paid a lower administrative fee to the probate court by not identifying the personal property at issue on the original inventory. But Defendant does not point to any evidence in the record supporting this allegation.

domain," (2) "wrongfully exerted," (3) "over another's personal property," and (4) "in denial of or inconsistent with the rights therein." *Schiff v. Investors Network Fund, LLC*, 09–14031, 2012 WL 113468, at *6 (E.D. Mich. Jan.13, 2012) (citing *Head v. Phillips Camper Sales and Rental, Inc.*, 234 Mich. App. 94, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999)). "[A] statutory claim of conversion consists of knowingly buying, receiving, or aiding in the concealment of stolen, embezzled, or converted property." *Schiff*, 09–14031, 2012 WL 113468, at *6 (E.D. Mich. Jan.13, 2012) (citing *Olympic Forest Products, Ltd. v. Cooper*, 148 Fed. Appx. 260, 265 (6th Cir.2005); (citing Mich. Comp. Laws § 600.2919a)); *Soc'y of St. Vincent De Paul in the Archdiocese of Detroit v. Am. Textile Recycling Servs.,* No. 13-CV-14004, 2014 WL 65230, at *5 (E.D. Mich. Jan. 8, 2014).

Defendant argues Plaintiff's conversion claim fails for two reasons. First defendant contends there is no evidence that it converted Plaintiff's personal property for its own purposes. This argument appears to be premised on either the alleged lack of an agency relationship between Defendant and its contractors who physically trashed the property, or that Defendant did not personally keep the property to use for its own benefit. Either way, Defendant's argument is without merit. The evidence reflects that there is at least a question of fact as to whether Defendant directed its contractors to destroy Plaintiff's personal property to "secure" the house for its own benefit. Indeed, Defendant's reliance on the mortgage provisions designed to protect its collateral demonstrates that the removal of Plaintiff's personal property was for Defendant's benefit.

Defendant's second argument is that it did not convert or commit trespass upon Plaintiff's personal property because it was exercising its rights under the mortgage. Defendant points to paragraph 9 the mortgage which it contends permits it to secure the

property and "eliminate building or other code violations or dangerous conditions."

Paragraph 9 of the mortgage provides:

> **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) *Borrower fails to perform the covenants and agreements contained in this Security Instrument*, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) *Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.* Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. *Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.* Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Defendant has failed to meet its summary judgment burden on this point. The record contains several genuine issues of material fact as to whether Defendant's and its contractors' actions were reasonable and appropriate under the facts and circumstances here. For example, the evidence does not conclusively establish that the house needed to be secured. The contractors' records contain inconsistencies as to the condition of the premises and whether there were in fact rat or animal droppings present. Likewise, the

evidence does not establish that the mortgage was in fact in default or that Defendant had a right to enter the property. There are also issues as to whether proper notice was sent to Brown regarding the property, the status of the loan, and the trash-out, among other things. In sum, Defendant's arguments fail on summary judgment because there are genuine issues of material fact as to validity of Plaintiff's trespass to chattel and conversion claims.

### C. Plaintiff's trespass claim

The same analysis applies to Plaintiff's trespass claim—Count IV of the complaint. "'A trespass is an unauthorized invasion upon the private property of another.'" *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 239 Mich. App. 695, 705, 609 N.W.2d 607, 613 (Mich. Ct. App. 2000) (citing *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 213 Mich. App. 186, 195, 540 N.W.2d 297, 302 (Mich. Ct. App. 1995)). Consent is an affirmative and absolute defense to a claim of trespass. *Id.* at 705-06; *Kaczmarek v. JPMorgan Chase Bank, N.A.*, No. 11-15214, 2012 WL 2115263, at *3 (E.D. Mich. June 11, 2012).

Like with the conversion and trespass to chattels claims, Defendant argues it is entitled to summary judgment on Plaintiff's trespass claim because it rightfully entered the premises under the terms of the mortgage. Defendant contends the mortgage establishes consent to enter the property under the facts and circumstances presented here. But as noted, there are genuine issues of material fact as to, among other issues, whether Defendant was entitled to enter the property to secure it under the terms of the mortgage. Defendant's motion for summary judgment on this claim is denied.

### D. Plaintiff's negligence claim

In Count VI, Plaintiff alleges that Defendant was negligent in wrongfully entering Plaintiff's home and removing Plaintiff's personal property without authority or without confirming its legal right to take such action. Defendant contends it is entitled to summary judgment on Plaintiff's negligence claim because Plaintiff fails to establish the breach of a duty owed by Defendant arising outside of the parties' contractual relationship.

To establish a *prima facie* case of negligence under Michigan law, a plaintiff must establish four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) the plaintiff suffered damages, and (4) the breach of duty caused the damages." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 298 (6th Cir. 2015). "The threshold question in a negligence action is whether the defendant owed a duty the plaintiff." *Fultz v. Union-Commerce Associates*, 470 Mich. 460, 464 (2004). When the relationship between the parties is governed by a contract, the duty allegedly breached must be independent from the contractual obligations of the breaching party. *McKerracher v. Green Tree Servicing, LLC*, No. 1:15-CV-235, 2015 WL 9942621, at *6 (W.D. Mich. Dec. 17, 2015).

Plaintiff concedes that the mortgage governs the relationship between the estate and Defendant. Plaintiff argues, however, that she has a valid negligence claim because Brown, personally, is not a party to the mortgage, and because she has alleged the breach of duties that exist outside of the parties' contractual relationship. Plaintiff's arguments are unavailing. Brown is not a plaintiff in this action in her individual capacity, and any damages she personally suffered are not the subject of this suit. Moreover, Plaintiff's negligence claim—which is based on alleged breaches of the duty to not commit

the tort of conversion and the duty to not commit the tort of trespass—is duplicative of its conversion and trespass claims as stated in Counts I–IV of the complaint. Plaintiff has not presented any authority establishing that these independently sustainable torts can form the basis of a negligence claim under the facts and circumstances here. Summary judgment is granted as to this claim.

### E. Plaintiff's claim under MCL 600.2918

In Count V, Plaintiff alleges the estate was forcibly ejected from the premises by Defendant in violation of MCL 600.2918. Plaintiff claims Defendant violated the statute by denying the estate the use of the premises and by removing and destroying the estate's personal property.

Section 600.2918(1) provides as follows:

> Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, is entitled to recover 3 times the amount of his or her actual damages or $200.00, whichever is greater, in addition to recovering possession.

There is no dispute that the estate was locked out from the property. There is also evidence in the record suggesting that the lockout may have been unlawful or improper. Defendant argues, however, that this claim fails because there is no evidence that physical force or violence was used in connection with the lock-out. The Court disagrees under the facts and circumstances presented here. While some courts have required allegations of physical force to state a claim under the act, *see Williams v. Ocwen Loan Servicing, LLC*, No. 15-13840, 2016 WL 5390861, at *3 (E.D. Mich. Sept. 27, 2016), other courts have concluded that merely locking out a plaintiff may be sufficient use of force to give rise to liability under the act. *See Kaczmarek v. JPMorgan Chase Bank, N.A.*, No.

14

11-15214, 2012 WL 2115263, at *4 (E.D. Mich. June 11, 2012). Under the facts and circumstances presented here, the Court finds that Defendant fails to satisfy its summary judgment burden with respect to Count V.

### F. Plaintiff's concert of action claim

In Count VII, Plaintiff asserts a claim based on a "concert of action" theory of liability. Concert of action is no longer a recognized cause of action in Michigan. *Mueller v. Brannigan Bros. Restaurants & Taverns LLC*, 323 Mich. App. 566, 580, 918 N.W.2d 545, 555, *appeal denied*, 503 Mich. 921, 920 N.W.2d 832 (2018). Defendant is entitled to summary judgment on this claim.

### G. Plaintiff's MCPA claim

In Count VIII, Plaintiff asserts a claim for violations of the Michigan Consumer Protection Act. Defendant argues Plaintiff's MCPA claim should be dismissed because, as a licensed mortgage loan servicer, Defendant is exempt from the MCPA. Defendant directs the Court to MCPA section 445.904(1)(a), which excludes from the MCPA any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a); *Minneweather v. Wells Fargo Bank, N.A.*, No. 12-13391, 2012 WL 5844682, at *2 (E.D. Mich. Nov. 19, 2012). As Defendant points out, courts in this district have routinely held that this exclusion applies to residential lending activities of state and federal banks. *See, e.g., Newton v. Bank West,* 262 Mich. App. 434, 441, 686 N.W.2d 491 (2004) ("Both Michigan courts and federal courts applying Michigan law have consistently held that the MCPA does not apply to claims arising out of residential mortgage loan transactions."); *Steinberg v. Fed. Home Loan Mortg. Corp.*, 901 F. Supp.

2d 945, 954 (E.D. Mich. 2012); *Droski v. Wells Fargo Bank, N.A.*, No. 11–11193, 2012 WL 3224134, at *6 (E.D. Mich. Aug. 6, 2012) ("Michigan courts have found that residential mortgage loan transactions are exempt from the MCPA."); *Jozlin v. U.S. Bank Nat. Ass'n*, No. 11–12749, 2012 WL 12760, at *6 (E.D. Mich. Jan.4, 2012) ("Those Michigan courts and federal courts which have applied Michigan law have consistently held that the MCPA does not apply to those claims which have arisen out of residential mortgage loan transactions.").[3] Accordingly, Defendant is entitled to summary judgment on this claim.

### IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED** as to Count VI (negligence), Count VII (concert of action), and Count VIII (violation of the Michigan Consumer Protection Act). Defendant's motion is otherwise **DENIED**.

**SO ORDERED.**

                                          s/Nancy G. Edmunds
                                          Nancy G. Edmunds
                                          United States District Judge

Dated: December 17, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 17, 2019, by electronic and/or ordinary mail.

                                          s/Lisa Bartlett
                                          Case Manager

---

[3] At the hearing on Defendant's motion, Plaintiff directed the Court to two cases from this district which purportedly support the opposite proposition. These cases, however, discuss the Michigan Collection Practices Act—not the Michigan Consumer Protection Act at issue in this case. S*ee Knight v. Ocwen Loan Servicing, LLC*, 301 F. Supp. 3d 723, 724 (E.D. Mich. 2018) (finding that the plaintiff stated claims for violations of the Michigan Collection Practices Act against Ocwen); *Keyes v. Ocwen Loan Servicing, LLC*, No. 17-CV-11492, 2018 WL 1315804, at *1 (E.D. Mich. Mar. 14, 2018) (same).